BLACK et al. v. HENRY G. ALLEN CO., (two cases.)

SAME v. FUNK et al.

(Circuit Court, S. D. New York. April 14, 1893.)

Nos. 4,718, 4,750, and 4,896.

1. PARTNERSHIP—EVIDENCE.

In an action by nonresident alien partners, the existence of the partnership is sufficiently proved by testimony of one of such partners. The written partnership agreement and the lex loci need not be put in evidence.

2. PLEADING—VARIANCE.

An allegation of an agreement made on a certain day by an American author, licensing foreign publishers to use his copyrighted article in an encyclopaedia, is sufficiently proved by evidence of an oral agreement between the parties to write the article for use in such encyclopaedia and to obtain a copyright therefor, existing at the time alleged.

3. COPYRIGHT—DATE OF DEPOSIT OF BOOK.

Books sent by the publishers April 5th, by express, from New York city to the librarian of congress, at Washington, D. C., to complete a copyright, were stamped by the librarian as received April 7th. The express company's delivery book, as well as the librarian's express receipt book, showed that a package of books was received from such publishers by the librarian on April 6th, while there was no entry of any such receipt on April 7th. There was evidence that the librarian's force of clerks was insufficient to handle the work of his office, and that sometimes books were not stamped until the day after their receipt. *Held* sufficient to justify a finding that the books were received April 6th.

4. SAME—PUBLICATION.

The publishers of a copyright book advertised and fixed a day of publication, and in advance thereof sent two lots of the books, in quires, to different publishers. The invoice accompanying one lot contained a request that the books be not exposed for sale until bound copies should be sent. *Held,* that the request should be considered as a condition of the consignment; that it might be inferred that a similar condition was annexed to the other consignment; and, in the absence of evidence that the request was not complied with, there was no publication, within the meaning of the copyright law.

5. SAME.

The publishers of a copyright book fixed upon and advertised a day of publication, and, three days in advance thereof, sent out copies to subscribers by carriers. *Held,* in the absence of proof that any of the books reached the subscribers before the day fixed, the court would not find that there was a publication in advance of such day.

6. SAME—VALIDITY—CHANGE OF TITLE.

A change of title, and the filing of such changed title after the filing of the original title, and before the publication of the book, does not render the copyright invalid.

7. SAME.

The title deposited for copyright purposes read: "An Outline of the Political and Economic History of the United States, with Maps and Charts. I. History and Constitution. By Alexander Johnston, M. A. II. Population and Industry. By Francis A. Walker, LL. D." The title of one of the books deposited to complete the copyright read: "United States. Part III. Political Geography and Statistics. Copyright, 1888, by Francis A. Walker." *Held,* that the copyright was not invalid as against one not claiming to have been deceived or mislead.

8. SAME—DEPOSIT OF TITLE IN DIFFERENT NAMES.

An American publishing firm entered in the office of the librarian of congress, for copyright purposes, the title of a volume of a foreign encyclo-

paedia, on the same day, but in advance, of the entry of the titles of separate articles therein written by American authors, and, for the purpose of completing the copyright, deposited the bound volumes one day in advance of a deposit of the separate articles. *Held*, that the American publishers held the copyright, if any was thereby obtained, in trust for the foreign owner, and its rights, and those of the American authors, were not affected by such conduct

9. SAME—DEPOSIT OF "BEST EDITION."
The copyright law, requiring a deposit of two copies of the best edition of the work to complete the copyright, is sufficiently complied with, in the case of a separate article of an American author published in a foreign encyclopaedia, by the deposit of the sheets or pages containing the article, taken out of the bound volume.

10. SAME—RIGHT TO OBTAIN.
An American publishing firm, acting for a foreign publishing firm, made an oral agreement with an American author to write an article for use in a foreign encyclopaedia, and to obtain a copyright therefor. There was no written assignment by the author, and the copyright was duly obtained in his name. *Held*, that the agreement amounted only to a license to use the article, and a copyright was properly taken in the author's name.

11. SAME—AUTHORITY TO DEPOSIT TITLE.
The American agents of a foreign publishing firm negotiating an agreement with an American author to write an article for use in a foreign encyclopaedia, and have the same copyrighted, have authority to deposit the title of such article for copyright purposes.

12. SAME—PRICE OF BOOK.
Nine dollars per volume for the Encyclopaedia Britannica, Ninth Edition, is not an exorbitant price.

13. SAME—ACTION FOR INFRINGEMENT—ESTOPPEL.
The failure of the publishers of a foreign encyclopaedia to press to completion suits for infringement of copyrights of certain volumes does not estop them from prosecuting suits for infringement of parts of later volumes.

14. SAME—PROPERTY IN.
The legal title to a copyright may remain in the proprietor, while the beneficial interest, to the extent which is agreed upon, may be in another party. Black v. Henry G. Allen Co., 42 Fed. Rep. 618, followed.

15. SAME—ASSIGNMENT.
A copyright, or undivided part thereof, may be assigned to a nonresident foreigner. Black v. Henry G. Allen Co., 42 Fed. Rep. 618, followed.

16. SAME—PART OF BOOK.
A copyright of a single article bound up in a volume, the bulk of which is publici juris, is valid against an unpermitted reprint of the copyrighted book. Black v. Henry G. Allen Co., 42 Fed. Rep. 618, followed.

In Equity. Bills by James T. Black, Francis Black, Adam W. Black, and Alexander B. McGlashen, partners as Adam & Charles Black, of Edinburgh, Scotland, against the Henry G. Allen Company, (two suits,) and by the same complainants against Isaac K. Funk and Adam W. Wagnalls, for infringement of copyrights. Heard on the merits. Injunction in each case.

For former reports, see 42 Fed. Rep. 618, 43 Fed. Rep. 680.

Francis Black, one of the complainants, testified that the complainants Blacks were partners in the publishing business, sharing the profits in common, acting under a partnership agreement in writing, but refused to produce such agreement.

There was evidence at the trial that the printed copies of the copyrighted articles or books in question were sent April 5, 1888, by Charles Scribner's

Sons, acting for complainants, by express, from New York city, addressed to the librarian of congress, at Washington, D. C., to complete the copyright of such articles or books, and that they were stamped by the librarian's assistant as deposited April 7th, and were recorded from such stamps. The express company's delivery book in Washington, as well as the librarian's express receipt book, showed that a package of books was received from Charles Scribner's Sons by the librarian on April 6th, while there was no entry of any receipt on April 7th. There was also evidence that the librarian's office was greatly crowded with work, and that his force of clerks was insufficient, and that sometimes books received for copyright purposes were not stamped until the day after their receipt.

The material portion of the letter written by Charles Scribner's Sons to A. & C. Black, of Edinburgh, referred to in the opinion, was as follows: "By request of Professor Johnston, we have forwarded, per steamer Alaska, sailing this morning, his MS. of article 'United States,' which we wish safely to hand. A copy has been retained here, as he will have advised you, to await your decision as to copyrighting this and Professor Whitney's section of the same article, together with the maps designed to accompany it."

Rowland Cox, for complainants.

James A. Whitney, for defendants.

TOWNSEND, District Judge. The first of the above-entitled cases is a bill in equity brought by James T. Black, Francis Black, Adam W. Black, and Alexander B. McGlashen, all of Edinburgh, Scotland, alleged to be copartners under the firm name of "Adam & Charles Black," and Francis A. Walker, of Boston, claiming infringement of copyright. McGlashen has deceased since the bringing of the suit. There is no evidence that he was a partner, or had any interest in the partnership. The court, prior to this hearing, allowed the entry of a disclaimer as to him; and the complainants are now the Blacks and Walker.

The principal allegations of the complaint are, in substance, as follows: Said firm, Adam & Charles Black, are publishers of the Encyclopaedia Britannica, Ninth Edition, which is made up of articles or books, each of which is, in many cases, a complete and independent book. Francis A. Walker was a citizen of the United States previous to February 13, 1888, and was the author of a book entitled: "United States. Part III. Political Geography and Statistics,"—which he printed and published. Before the publication of said book, which was made by said Walker in the United States, he, on February 13, 1888, delivered at the office of the librarian of congress a printed copy of the title, and also, within 10 days from its publication, delivered to the librarian of congress two complete printed copies of said book, of the best edition issued; and in the several copies of every edition published, on the title page, were the words, "Copyright, 1888, by Francis A. Walker." The librarian, on February 13, 1888, recorded said name of said book, and there was granted to said Walker a copyright for 28 years from February 13, 1888. Said Walker, by an agreement made on or about April 1, 1888, assigned to said Adam & Charles Black the exclusive right of using said book as a part of the twenty-third volume of said Encyclopaedia Britannica; said Walker retaining the right to publish and sell said book in every other form and manner. If said

agreement, made on or about April 1, 1888, did not assign an interest in said copyright to said firm, it is an exclusive and irrevocable license, and said firm acquired thereby an equitable interest in the copyright, which is substantially the same whether said agreement was an assignment or a license. Defendant has reprinted said Encyclopaedia Britannica, Ninth Edition, including said article, "United States. Part III,"—and omitting the marginal notes of the original, and the copyright notice on the title page. None of the articles in volume 23 of said Encyclopaedia Britannica have been copyrighted in the United States, except the one above referred to, and two others.

The complaint has already been held sufficient on demurrer by Judge Shipman, in an able and exhaustive opinion, which decides the most important of the questions arising in the cause. The defendant, however, insists that the evidence does not support the complaint. The defendant, in its answer, denies particularly nearly all of the allegations of the complaint, but admits reprinting volume 23 of the encyclopaedia in question, including the articles claimed to be copyrighted. Defendant also alleges affirmatively a variety of matters, and these allegations appear, for the most part, to be true.

Defendant claims that the existence of a partnership is not established; that, as the partners resided and carried on their business in Scotland, and, as it is proved that there was a written partnership agreement, this agreement, and the law of Scotland as to partnerships, should have been put in evidence by the complainant. It seems to me that the partnership has been sufficiently proved for the purposes of this case.

Defendant also claims that the substance of the complaint is not proved; that the complaint alleges a specific agreement licensing the Blacks to use the copyrighted article, made on or about April 1, 1888,—that is, after the recording of the title of the article in the office of the librarian of congress, and somewhere about the date of publication; and that there is no evidence of any such agreement. The complainant Walker was called as a witness, but did not testify on this point. The facts appear to be these: Francis A. Walker prepared the article in question some time previous to the year 1888, at the request of Henry F. Clark, who was then in the employ of Charles Scribner's Sons. The agreement to write the article was oral. It was understood between Walker and Clark that the articles were to be copyrighted. The agreement to write the articles may be fairly inferred to have been made with the understanding that the ownership, title, and copyright should be as should be found to be most for the benefit of the Blacks. As the article was to be copyrighted, and as, for this purpose, it was necessary that the legal title should remain in Walker, or be assigned to the Scribners, and there is no proof of any such assignment to the Scribners, I regard it as an agreement that the title should remain in Walker, while the Blacks had the right to use the article in their encyclopaedia. As to the

date of April 1, 1888, there is no evidence of any specific agreement made on or about that date; but, as substantially such an agreement was in existence and in force at the time of publication, and on April 1st, I think the facts proved sufficiently support the allegation.

Defendant denied that any copies of the book in question were delivered at the office of the librarian within 10 days after publication. The date of publication is claimed by the plaintiff to be March 27, 1888, and the date of delivering the books in the office of the librarian of congress to be April 6, 1888. Much testimony was offered as to whether the books were so delivered on April 6th or April 7th, and, while there is very sharp dispute as to the effect of the testimony, I have concluded, and find, that two copies of the book in question, sent by Charles Scribner's Sons, reached the office of the librarian of congress on April 6, 1888.

The date of the publication in this country was March 27, 1888. Defendant claimed that several thousand copies of the encyclopaedia, containing the work in question, were sold in Great Britain before March 27, 1888. An examination of the exhibits, however, shows that most of these were sent to the Scribners in preparation for publication in the United States on March 27th. On or about March 12th, two lots of the encyclopaedia, in quires, were sent to two different publishers. The invoice which accompanied one of these lots was obtained and produced, and it contains a request that the books be not exposed for sale until bound copies should afterward be sent. Under the circumstances, I think this request may properly be considered as a condition of the consignment or sale. There is no evidence that the request was not complied with. In the absence of evidence to the contrary, it may fairly be inferred that a similar condition was annexed to the other consignment.

On March 24th the Blacks published, in periodicals, advertisements that they would publish volume 23 of the encyclopaedia on March 27th; also, on March 24th, they sent out upward of 2,000 copies. While it is possible that some of these copies may have reached the subscribers before March 27th, there is no proof that any one of them did. In many, perhaps most, of the cases, it is clear that they could not have reached them before that day. There is no proof that any of these copies were actually within the control of any purchaser before March 27th. The Blacks, in good faith, made March 27th the date of publication, and distributed the works in the manner they did with the intent that no publication should take place until that day; and, in the absence of any proof to the contrary, I am of the opinion that publication was made, both in Great Britain and this country, on March 27, 1888.

A considerable number of copies were sent by carriers to subscribers on March 24 and 26, 1888, by the Blacks. I find no evidence which makes it certain that any of these reached the subscribers before March 27th. Defendant claimed that these deliveries to the carriers, to be forwarded to the subscribers, made

the books the property of the subscribers upon delivery to the carriers, and that, therefore, there were absolute sales and a publication on March 24th. Even if the sales were completed, in the absence of proof that any of these books actually reached the purchasers before March 27th, I hold that such change of title alone did not amount to publication.

On December 31, 1887, Charles Scribner's Sons deposited in the office of the librarian of congress this title: "An Outline of the Political and Economic History of the United States, with Maps and Charts. I. History and Constitution. By Alexander Johnston, M. A. II. Population and Industry. By Francis A. Walker, LL. D." In depositing this title they were acting for Gen. Walker and Prof. Johnston, and for the Blacks. This title was intended to cover the same works as those in question in these suits. Under this title a copyright commenced which might have been perfected, and would have run for 28 years from December 31, 1887. A copyright, from the time of recording the title, is under the protection of the law. In equity, the authors were entitled to protection from the date of the record of the title, December 31, 1887, and between December 31 and February 13, 1888. Pulte v. Derby, 5 McLean, 328.

Defendant's counsel argued that, if the copyright in this case is held valid, it dates from the filing of the second title, on February 13, 1888, and would therefore extend the term of the copyright to more than 28 years, and that, therefore, any copyright claimed under this filing of the second title must be void. Complainants' counsel insists that, even if the authors at first contemplated copyrighting their productions as a single volume, they might change their minds, and pursue the course which they did. No decisive authority is cited, sustaining either claim. It is easily seen that an author may find it to his advantage to change the title of his work between the time of his taking his first step toward obtaining a copyright and the actual publication of the book. I do not think that the courts should hold that such change of title renders a copyright invalid, unless compelled to do so, and I do not think they are so compelled. It may be that the copyright, as completed by the deposit of the published work, does not extend more than 28 years from the filing of the original title, but that does not affect the present case. Furthermore, if it were necessary, in order to sustain complainants' copyright, there would be much ground for claiming that the published title of the articles in question, and the articles themselves, sufficiently identify them, as against these defendants, with the title filed on December 31, 1887, to bring the case within the doctrine of Carte v. Evans, 27 Fed. Rep. 861, which holds that if the title of the book, as published, is substantially the same as that filed in the office of the librarian of congress, the copyright is valid. The title filed in the office of the librarian of congress on December 31, 1887, seems to have indicated to the mind of the defendant's counsel that it referred to

v.56f.no.10—49

the encyclopaedia articles in question, and there is no claim that defendant was deceived or misled by it.

Defendant claims. that Charles Scribner's Sons entered the title of, volume 23 of the Encyclopaedia Britannica, Ninth Edition, on the same day, and before the separate title of the work of Walker was entered, and that, for the purpose of completing the copyright of the encyclopaedia, they deposited two bound copies thereof on April 5, 1888, and before the deposit of the printed copies of Gen. Walker's article as a separate work, and such seems to be the fact. Defendant claims that, if there was any copyright of the articles in question, it was accomplished by the entry of the title of volume 23 of the Encyclopaedia Britannica, and the deposit of the bound copies, and that, the copyright being thereby completed, the entry of the separate title, and the deposit of the separate books, was void. If the Scribners gained any copyright of the articles in question by these acts, they could only hold it in trust for the complainants in this action, (Drone, Copyr. p. 260,) in accordance with the agreement before referred to; and this would not in any way change the substantial right of the complainants, or the equity of their case.

The two copies of the separate work of Walker, deposited in the office of the librarian of congress to complete the copyright, were obtained by taking to pieces a bound volume of the Encyclopaedia Britannica, and taking the sheets which contained the articles, and depositing them in the librarian's office. Defendant claims that this is not a deposit of the best edition of the work, or of any edition at all. The facts are as claimed by defendant, but I think this is a sufficient compliance with the statute.

Defendant claims that the agreement between Walker and the Blacks constituted, in law, an entire assignment from him to the Blacks. The facts in regard to the agreement have been stated. I believe there is no evidence of any agreement other than that contained in the conversation between Walker and Clark in 1887, and the acts of the parties thereunder; and I do not hold that, as matter of law, this agreement amounts to an assignment of all the legal and equitable title and interest of the author in the work.

Defendant claims that there is nothing to show that the Scribners were authorized to deposit the title or the printed copies of the work in the office of the librarian of congress, but I think it sufficiently appears that they had such authority.

Defendant further alleges that the Blacks had asked the price of "nine dollars per volume for said Encyclopaedia Britannica, which is exorbitant," but I find that said price is not exorbitant.

Defendant alleges that other articles have been made and included in the same way in former volumes of the Encyclopaedia Britannica, and suits therefor have never been prosecuted to a final hearing, and that, by the failure of the complainants to press said suits to a final hearing, the defendant has been encouraged and led to make the reprint. I do not think that the failure to

press former suits to a final hearing estops the complainants from prosecuting this one. Those suits must have given defendant notice of complainants' claims as to their rights.

Finally, defendant alleges that the profits of the defendant have been in no wise enhanced by including said work, "United States. Part III.," etc.,—in the copies made by them; that the said work, "United States. Part III.," etc.,—is, in itself, of no substantial value; that defendant has not offered it for sale in the United States, except as a part of the Encyclopaedia Britannica; that the suit is not brought bona fide for the purpose of recovering profits which would have arisen from the sale of this work by itself, or restraining any damage accruing from the sale of said work per se, but is brought to enable plaintiffs to represent that defendant sold a mutilated copy of said foreign work. The questions raised by these allegations are interesting and important, but I think they are fairly answered by the rulings of Judge Shipman in his opinion before referred to, with all of which rulings I fully concur, and which must govern in this case. Black v. Henry G. Allen Co., 42 Fed. Rep. 618. In that opinion, Judge Shipman holds that the legal title to a copyright may remain in the proprietor, while the beneficial interest, to the extent which is agreed upon, may be in another party; that a copyright, or undivided part thereof, may be assigned, and assigned to a nonresident foreigner; that a copyright of a single article bound up in a volume, the bulk of which is publici juris, is valid against any unpermitted reprint of the copyrighted book; that there is "no unfairness or injustice in the complainants' use of the copyright laws for their pecuniary advantage, and as a weapon with which to repel a competition which is more enterprising than considerate."

In the case of James T. Black et al. v. Isaac K. Funk et al., (No. 4,896,) the pleadings and facts are substantially the same, except that there are different defendants, and that McGlashen was not named as one of the complainants.

In the case of James T. Black et al. v. The Henry G. Allen Company, (No. 4,750,) John McAllan, as administrator of Alexander Johnston, is one of the complainants, instead of Francis A. Walker, and the article concerning which infringment is claimed is: "United States. Part I. History and Constitution." Otherwise, the pleadings and evidence are substantially the same, except that the witness Henry F. Clark does not testify directly as to the alleged agreement of April 1, 1888. The defendant claims that a letter from the Scribners to the Blacks, indicating that Prof. Johnston awaited their decision as to copyrighting the article, proves that there was a complete assignment prior to the filing of the title, and delivery of the books, in the office of the librarian of congress. But this letter seems to me to show that the same agreement existed between the Blacks and Johnston, as between the Blacks and Walker, and on the whole evidence I am convinced that such was the fact.

Complainants' copyright is infringed, and an injunction will be

granted upon final hearing, without reference to the question of substantial damage. Reed v. Holliday, 19 Fed. Rep. 327. Complainants, in their brief, have waived any claim for an accounting. Let there be a decree for an injunction in each case.